Dear Messrs. McCollister and Wall:
You jointly requested the opinion of the Attorney General regarding certain provisions of the Louisiana Insurance Code, specifically La. R.S. 22:1382(A)(3)(a)(ii)(aa) and (bb), which provides as follows:
 "(aa) Beginning January 1, 1990, and ending December 31, 2002, no member insurer may be assessed in any year an amount greater than two percent of that member insurer's net direct written premiums for the preceding calendar year. Beginning January 1, 2003, and thereafter, no member insurer may be assessed in any year an amount greater than one year. If the maximum assessment, together with the other assets of the association, does not provide in any one year an amount sufficient to make all necessary payments, the funds available shall be prorated and the unpaid portion shall be paid as soon thereafter as funds become available. However, as to any assessment or portion thereof payable after May 1, 1992, payors doing business in Louisiana under a valid certificate of authority as of January 1, 1992, and who as of August 21, 1992 have at least one-half of their total admitted assets invested in qualifying Louisiana investments as defined in R.S. 22:1068(C), shall receive an earned credit for the amount of such assessment payable as follows: the association shall establish on its books an assessment credit fund and shall set aside and escrow in such fund ninety-five percent of the amount actually received by the association from each payor qualifying for such earned credit; not later than sixty days after receipt of such payments, the association shall certify to each payor the amount in such fund attributable to each qualifying payor; amounts credited to the assessment credit fund shall be expended by the association, only to the extent funds are not otherwise available, to meet its obligations under any cooperative endeavor agreement dated as of October 1, 1990, (together with all amendments and supplements thereto entered into by the association) and upon satisfaction of all of the association's obligations under such cooperative endeavor agreement and the termination thereof in accordance with its terms, the balances in the assessment credit fund shall be promptly paid over by the association to each payor qualifying for the earned credit in the amounts certified by the association; to the extent amounts then on deposit in the fund are insufficient to make such payments to such payors, such amounts shall be paid over by the association pro rata. However, the payors shall continue to have a claim of first priority against funds thereafter received by the association until the earned credits are paid in full by the association. Notwithstanding the foregoing, no amounts shall be paid by the association to any payor that has received an earned credit until the association has satisfied all of its obligations under any cooperative endeavor agreement, dated as of October 1, 1990, (together with all amendments and supplements thereto entered into by the association) and such agreement has been terminated in accordance with its terms. In the event any indebtedness secured or permitted to be secured under the cooperative endeavor agreement dated as of October 1, 1990, (together with all amendments and supplements thereto) is refunded or otherwise refinanced by the extension of such existing cooperative endeavor agreement and the incurrence by the association thereunder of indebtedness not contemplated by such agreement as of August 21, 1992, upon the payment and satisfaction by the association of all of its obligations and commitments thereunder, such agreement shall be deemed to be terminated for purposes of this Item.
 (bb) As to any assessment made on or after the termination of any such cooperative endeavor agreement in accordance with its terms or deemed terminated under the provisions of this Item, payors doing business in Louisiana under a valid certificates of authority as of January 1, 1992, and who, on August 21, 1992, have at least one-half of their admitted assets invested in qualifying Louisiana investments as defined in R.S. 22:1068(C), shall have such assessment reduced by eighty percent of the amount otherwise assessed." (Emphasis supplied)
 1. Has the period for qualifying for the assessmentcredit mentioned in either (aa) or (bb) above, or both, ended orcan a company still qualify for those assessment credits? If aqualifying period has ended, when did such period end?
Subsection (aa) authorizes an assessment credit for any assessment payable after May 1, 1992. The only insurers who qualify for the assessment credit under (aa) are those "payors doing business in Louisiana under a valid certificate of authority as of January 1, 1992, and who as of August 21, 1992 have at least one-half of their total admitted assets invested in qualifying Louisiana investments as defined in R.S. 22:1068(C)".
Subsection (aa) requires LIGA to set up an assessment credit fund into which is to be deposited 95% of the amount actually received by LIGA from each payor qualifying for such earned credit. LIGA is then to expend the amounts credited to the assessment credit fund to meet its obligations under the cooperative endeavor agreement dated as of October 1, 1990 and upon satisfaction of all of LIGA's obligations under such cooperative endeavor agreement and the termination of the agreement in accordance with its terms, the balance in the assessment credit fund is to be turned over to each payor qualifying for the earned credit in the amounts certified by the association.
The LPFA issued its $50,000,000 Special Insurance Assessment Revenue Bonds dated October 1, 1990 (the "1990 Bonds"), and in connection therewith LIGA entered into a Cooperative Endeavor Agreement dated as of October 1, 1990 (the "1990 Cooperative Endeavor Agreement"). The 1990 Bonds were refunded by the issuance of the LPFA's $136,705,000 Special Insurance Assessment Revenue Bonds, Series 1993 (the "1993 Bonds"). A Cooperative Endeavor Agreement was executed in connection with the 1993 Bonds (the "1993 Cooperative Endeavor Agreement"); however, the 1993 Cooperative Endeavor Agreement is a separate and distinct document which does not extend the 1990 Cooperative Endeavor Agreement. The 1990 Cooperative Endeavor Agreement terminated upon the refunding of the 1990 Bonds which occurred on or about October 25, 1993.
In order to qualify for the assessment credit, the insurer must be a payor doing business in Louisiana under a valid certificate of authority as of January 1, 1992, and who as of August 21, 1992 has at least one-half of its total admitted assets invested in qualifying Louisiana investments. It is assumed that the number of insurers who qualified is a finite number determinable as of August 21, 1992. The Official Statement issued in connection with the 1993 Bonds contains a section entitled "THE PROGRAM — Insurer Assessments" which contains a detailed description of the proposed distributions, setting forth the total amount of money set aside to make the distributions and listing the six insurance companies which had qualified for the earned credit. The Official Statement specifically states:
 "In 1992 LIGA set aside $791,066.64 in this escrow account and in 1993 (the first full year of the effect of this credit), $2,317,224.06 was so deposited. Once the Prior Bonds are deemed to be no longer outstanding, these escrowed credits will be returned to these six companies. Upon delivery of the Series 1993 Bonds, Assessments will be levied at twenty percent (20%) of the normal Assessment amount (currently 2%) for the six companies who qualify. The period for qualifying has ended and is therefor only available to the six companies identified below." (Emphasis supplied)
Despite the language in the Official Statement for the 1993 Bonds, bolded above, stating that the period for qualifying has ended, the statute does not state a specific time in which an insurer must apply for the assessment credit. As a practical matter, only a finite number of insurance companies would be able to meet the qualifications for the assessment credit — probably only those six companies which were listed in the 1993 Bonds Official Statement.
You also questioned the assessment credit contained in Subsection (bb), however, Subsection (bb) does not contain a credit but rather reduces the amount of assessments made after the termination of the 1990 Cooperative Endeavor Agreement. The reduction in the amount of the assessment only applies to "payors doing business in Louisiana under a valid certificate of authority as of January 1, 1992, and who, on August 21, 1992, have at least one-half of their admitted assets invested in qualifying Louisiana investments as defined in R.S. 22:1068(C)". It is assumed that there are only a finite number of insurance companies which meet the criteria of Subsection (bb) — probably the same six companies who met the criteria in Subsection (aa).
2. What is the acceptable "as of date" for providingqualifying evidence and documentation for determining if acompany meets the investment requirements set forth in saidstatute? Is August 21, 1992, September 30, 1992, or December 31,1991 an acceptable date?
As indicated earlier, the statute does not provide when the insurance company must provide the evidence proving that it qualifies for the assessment credit or the reduced assessment; however, Subsection (aa) specifically provides that the investment requirements must be satisfied "as of August 21, 1992". Subsection (bb) provides that the insurer must have the required amount of assets invested in qualifying Louisiana investments on August 21, 1992. The only date which can be used to determine if the insurers met the statutory criteria is August 21, 1992, not September 30, 1992 nor December 31, 1991.
3. Must a company maintain at least one-half of theirtotal admitted assets in qualifying Louisiana investments inorder to remain eligible for the reduced assessments set forth in(bb) of this statute?
The statute does not require that the company maintain at least one-half of its total admitted assets in qualifying Louisiana investments in order to remain eligible for the reduced assessments.
4. Prior to the issuance of Bonds in 1993, LIGA set-asidein escrow 95% of the assessments paid by qualified companies asrequired by (aa) of the above statute. LIGA refunded these fundsto the qualified companies upon the issuance of the Series 1993Bonds. Should these funds have been refunded back to the qualifiedcompanies upon the issuance of the Series 1993 Bonds? Yes. The statute authorizing the refund provides that no amounts shall be paid to any payor until LIGA has satisfied all of its obligations under the 1990 Cooperative Endeavor Agreement, together with all amendments and supplements thereto, and the agreement has been terminated in accordance with its terms. Upon the termination of LIGA's obligations under the 1990 Cooperative Endeavor Agreement and the termination thereof in accordance with its terms, the balances in the assessment credit fund were to be promptly paid over by LIGA to each payor qualifying for the earned credit. In the event that the indebtedness secured by the 1990 Cooperative Endeavor Agreement is refunded or refinanced by the extension of such cooperative endeavor agreement and the incurrence of indebtedness not contemplated by the cooperative endeavor agreement as of August 21, 1992, upon the payment of the additional indebtedness, the cooperative endeavor agreement shall be deemed to be terminated.
As stated in our answer to your first question, the 1993 Cooperative Endeavor Agreement was not an extension of the 1990 Cooperative Endeavor Agreement. We have reviewed the 1993 Cooperative Endeavor Agreement and are of the opinion that it is not an amendment of or supplement to the 1990 Cooperative Endeavor Agreement; therefore, the 1990 Cooperative Endeavor Agreement terminated on or about October 23, 1993 when the 1993 Bonds were issued refunding the 1990 Bonds. As shown by the enclosed defeasance opinion of Kutak Rock dated October 25, 1993, in connection with the issuance of the 1993 Bonds, the Prior Bonds were deemed no longer outstanding as of the date of the refunding. Thus, LIGA appears to have complied with the provisions of Subsection (aa) when it refunded the amounts contained in the assessment fund.
5. If the answer to Question 4 is no, what correctiveaction should LIGA take?
As the answer to question number 4 is yes, this question is moot. Trusting this adequately responds to your request, I remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ______________________ MARTHA S. HESS Assistant Attorney General
Enclosure
Mr. Rolfe H. McCollister General Counsel Louisiana Insurance Guaranty Association of Insurance 3029 South Sherwood Forest Blvd., #100 Baton Rouge, LA 70816
Mr. A. Kip Wall Deputy Commissioner Department P.O. Box 94214 Baton Rouge, LA 70804
DATE RECEIVED: JUNE 13, 1995
DATE RELEASED:
MARTHA S. HESS, ASSISTANT ATTORNEY GENERAL